# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

HUNG NAM TRAN,

    Plaintiff,

v.                                                                           Case No. 08-C-228

ROBERT S. KRIZ, KIMBERLY M. ROBERTS,
JENNIFER HIELSBERG,

    Defendant.

**ORDER**

       Plaintiff Hung Nam Tran, who is serving a civil commitment at the Wisconsin Resource Center ("WRC") in Winnebago County, Wisconsin, under Wis. Stat. Ch. 980 (Sexually Violent Person Commitments), has filed an action under 42 U.S.C. § 1983. Ordinarily, a plaintiff must pay a statutory filing fee of $350 to bring an action in federal court. 28 U.S.C. § 1914(a). Tran, however, has requested leave to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915.

       Section 1915 is meant to ensure indigent litigants meaningful access to federal courts. *Nietzke v. Williams*, 490 U.S. 319, 324 (1989). An indigent plaintiff may commence a federal court action, without paying required costs and fees, upon submission of an affidavit asserting inability "to pay such fees or give security therefor" and stating "the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). Tran filed the required affidavit of indigence. Upon review of that affidavit, it appears that he could not pay the $350 filing fee. Because plaintiff is under a civil commitment, as opposed to serving a sentence for a crime, he is not a prisoner within the meaning of the Prison Litigation Reform Act and 28

U.S.C.§ 1915's provisions requiring the assessment and collection of the full filing fee over time do not apply. *West v. Macht*, 986 F. Supp. 1141, 1142 (W.D. Wis. 1997). Thus, *in forma pauperis* status will be granted.[1]

I nevertheless maintain a duty to "screen" all complaints under 28 U.S.C. § 1915(e)(2) to ensure that they comply with the Federal Rules of Civil Procedure and that they state at least plausible claims for which relief may be granted. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007) (citing 5 Wright & Miller § 1216, at 233-234); *see also Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (Posner, J., sitting by designation) ("Some threshold of plausibility must be crossed at the outset . . . ."). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must

---

[1] Although he mentions additional plaintiffs in his caption and styles his complaint as a class action, Tran is advised that he may bring his pro se complaint on behalf of himself only. Pro se litigants may not proceed on behalf of another. *See Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001). To certify a class action, the court must find, among other things, that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Since absent class members are bound by a judgment whether for or against the class, they are entitled at least to the assurance of competent representation afforded by licensed counsel." *Campbell v. Secretary, Dept. of Corrections*, 2005 WL 2917465, *10 (W.D. Wis. 2005).

allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Tran has named as defendants in this case three employees of the WRC where Tran resides: Institutional Unit Supervisor Robert Kriz, Social Worker Kimberly Roberts, and Psychiatric Care Technician Jennifer Heilberg. All of the named defendants have been sued in their individual and official capacities.[2]

*Sexual Harassment*

Tran alleges violations of his rights under the United States Constitution, federal, and state law. He claims he was subject to sexual harassment by defendant Roberts, a social worker at WRC. According to Tran, defendant Roberts called him into her office to ask whether he wanted a formal hearing regarding documentation by defendant Kriz that Tran had received mail from a Philadelphia, Pennsylvania address, and a source identified only as "Gail, P.G.," which contained pornographic pictures of female genitalia. Tran claims he informed Roberts that he did not order the pictures, and would have no motivation to do so, because he is homosexual. He requested that he be allowed to destroy the pictures, but Roberts told him they were necessary evidence for Tran's future evaluations and proceedings. Tran alleges that Roberts then admitted to sending the

---

[2] To the extent Tran has attempted to assert damage claims against the defendants in their official capacities, his suit is, in effect, an action against the state and is be barred by the Eleventh Amendment. *See Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir.1987) ("A suit for damages against a state official in his or her official capacity is a suit against the state for Eleventh Amendment purposes."). Tran's official capacity damage claims are therefore dismissed.

pornography herself, telling Tran that she wanted him to have "appropriate" sexual materials, and that he needed to exhibit heterosexual behavior. Tran alleges that Roberts provided him with her sister's contact information so that he could contact her, suggesting she could assist him in walking toward "moral correctness." He claims he reported Robert's behavior to Defendant Kritz, who did nothing but accuse him of fabricating his allegations.

"[S]exual harassment or abuse may form the basis of an Eighth Amendment claim under § 1983." *Tineybey v. Peters*, 2001 WL 527409, *2 (N.D. Ill. 2001) (citing *Walker v. Taylorville Correctional Center*, 129 F.3d 410, 413 (7th Cir. 1997)). However, "[t]o rise to the level of a constitutional violation, such harassment or abuse must be objectively and sufficiently serious. Despite this vague language, the case law is replete rulings that verbal harassment and minor physical contact fail to meet this criteria. " *Tineybey*, at *2 (internal citation omitted); *see Howard v. Everett*, 208 F.3d 218, *1 (8th Cir. 2000); *Dewhart v. Carlety*, 2007 WL 1876469 (W.D. Mich. 2007) (collecting cases); *Walker v. Akers*, 1999 WL 787602, *5 (N.D. Ill. 1999) ("Absent physical contact, a single incident of verbal harassment does not rise to the level of an Eighth Amendment violation.") Here, Tran alleges a single incident of harassment without any physical contact. This is insufficient to state a cognizable claim. *See Adkins v. Rodriquez,* 59 F.3d 1034 (10th Cir.1995) (entering female inmate's cell and making sexually suggestive remarks insufficient to state Eighth Amendment claim for sexual harassment); *Walker*, at *5 (entering an inmate's cell with a stun gun and demanding that the inmate perform a sexual act does not rise to the level of an Eight Amendment violation).

Although Tran suggests that his harassment by Roberts was motivated in part by his sexual orientation, "[v]erbal harassment about sexual preference cannot state an Eighth Amendment

4

claim." *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401, *3 (6th Cir. 1997). Thus, Tran may not proceed with his sexual harassment claim against Roberts. It follows that his claim that Kriz was deliberately indifferent to the sexual harassment likewise fails.

*Verbal Abuse*

Tran also claims that in the past, Roberts called him a "gook;" however, this is insufficient to state an actionable claim. "Although racial slurs are unprofessional and deplorable, they do not constitute a deprivation of constitutionally protected rights." *Worthon v. Dowhen*, 81 F.3d 164, *1 (7th Cir. 1996) (citing *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987)).

*HIPAA Violation*

Tran claims Roberts also disclosed his patient records to a Wisconsin Department of Corrections parole agent in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d et seq. But because the HIPAA does not create a private right of action, I need not consider whether Roberts' actions offended the statute. *Johnson v. Quander*, 370 F. Supp. 2d 79, 99-100 (D.D.C. 2005); *University of Colorado Hosp. v. Denver Publishing Co.*, 340 F. Supp. 2d 1142, 1144-46 (D. Colo. 2004).

*Clothing*

Tran claims that Kriz violated his rights by destroying or withholding Tran's clothing that displayed screen printing Kriz considered "morally offensive" and "counter-therapeutic." However, the Seventh Circuit has held that Chapter 980 patients "may be subjected to conditions that advance

5

goals such as preventing escape and assuring the safety of others." *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). These conditions include incarceration that is essentially identical to the conditions found in a common jail or prison. Restrictions on the type of clothing a person is permitted to wear are commonplace in such a setting. *See Thielman v. Leean*, 140 F. Supp. 2d 982, 988, 999 (W.D. Wis. 2001) (finding no constitutional violation where Chapter 980 patients were required to wear state-issued clothing when they left their assigned living units.)[3] Therefore, Tran's allegations fail to state a claim.

*Catalogs and Magazines*

Tran also alleges that Kriz withheld from him magazines Kriz found "morally offensive," and clothing catalogs which contained photographs of children acting as clothing models. Tran states that he prefers to order children's clothing from such catalogs because of his small stature. "[A]lthough courts have not defined the contours of civilly detained persons' rights to free speech, the rights of civilly confined persons can be no more restrictive than those afforded prisoners." *Everett v. Watters,* 2007 WL 2005264, *2 (W.D. Wis. 2007) (citing *City of Revere v. Massachusetts Gen. Hospital*, 463 U.S. 239 (1983) ("[T]he due process rights of a [pretrial detainee or other persons in state custody] are at least as great as the Eighth Amendment protections available to a convicted prisoner.")). In the prison context, regulations that restrict a prisoner's access to

---

[3] Tran does not specifically allege that withholding his clothing violated the Wisconsin Mental Health Act, which he references elsewhere in his complaint. The statute provides that a civilly committed patient may "use and wear his . . . own clothing and personal articles." Wis. Stat. § 51.61(1)(q). However, even if Tran intends by his allegations to challenge Kriz's actions as a violation of state law, state statutes generally cannot be enforced via federal lawsuits. *Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003) ("[T]he Constitution does not compel states to follow their own laws. Nor does it permit a federal court to enforce state laws directly.")

6

publications are "valid if [they are] reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "Conversely, when such a connection is lacking, restrictions on publications constitute an impermissible infringement of inmates' First Amendment rights." *Riley v. Doyle*, 2006 WL 2947453, *1 (W.D. Wis. 2006) (granting plaintiff leave to proceed with his claim that defendants violated his right to free speech by prohibiting him from receiving pornography and books about psychology). Defendants may well have a valid reason for denying plaintiff certain catalogs and magazines, but it is their burden to articulate that reason. *Id*. Broadly construing the complaint in Tran's favor, he has alleged enough to state a claim that defendant Kriz violated his rights under the First Amendment.

*Transfer*

Tran also alleges that under Kriz's direction, he is subject to transfer between the WRC and Sand Ridge Secure Treatment Center ("Sand Ridge") every eight months as a matter of policy, or upon filing a lawsuit, for the purpose of rendering moot any claims he may have regarding his confinement. Yet although Tran alleges he is "subject to" transfer, he does not claim that he has in fact been transferred, or even that his transfer has been threatened. Thus, he cannot maintain a claim for retaliation. Although he complains of a general policy that patients are transferred between the facilities every eight months, Tran has no constitutional right to be housed in the facility of his choice. *See McGee v. Thomas*, 2007 WL 2440990, *3 (E.D. Wis. 2007) (holding that transfer from the WRC to Sand Ridge did not constitute impermissible punishment); *Falcon v. U.S. Bureau of Prisons*, 852 F. Supp. 1413, 1420 (S.D. Ill. 1994) ("A pre-trial detainee does not have the

7

right to be housed at the facility of his choice, nor does he have a right to remain in the institution to which he was initially, or even at one time, assigned."). Therefore, this claim will be dismissed.

*72 Hour Reassignment*

Tran further alleges that Kriz improperly punished him by placing him on two "72 hour reassignments." The first was imposed after an altercation in which Tran had directed profanity at a WRC staff member who was escorting other residents to the recreation area, and asked him if he was being a "tough guy." Tran admits that he engaged in the behavior, but claims he had already received a verbal warning for his behavior from the staff member involved in the incident, such that further punishment violated the Double Jeopardy Clause. However, "[t]he [Double Jeopardy] Clause . . . protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99 (1997). Accordingly, this claim will be dismissed.

Kriz imposed the second 72 hour reassignment after he was notified by defendant Hielsberg that Tran was being disruptive and disrespectful in the unit to which he had been reassigned. Tran claims he was merely talking with other patients about the defendants' improper behavior and that of other correctional employees. Defendant Hielsberg issued a conduct report regarding the incident. According to Tran, he was placed "in seclusion for three days from January 14 to January 17, 2008. This period of time is called '72 hours reassignment' which [is] in itself a disciplinary punishment." (Compl. ¶ 39.) However, "72 hour re-assignment is not intended as punishment," and does not implicate a liberty interest protected by the Constitution. *Clark v. Taggart*, 2007 WL 1655160, *4 (E.D. Wis. 2007); *see Robinson v. Fergot*, 2005 WL 300376, *6 (W.D. Wis. 2005) ("Temporary reassignment is not grounded in punitive intent; it is merely a part of the process by

8

which officials at the facility investigate alleged misconduct and determine what steps need to be taken in response.")

In addition, although Chapter 980 inmates may not be punished in a traditional sense, the fact that they are involuntarily incarcerated means that they are subject to standard rules of confinement, and may be punished for violating the rules of the institution in which they are confined. *McGee v. Thomas*, 2007 WL 2440990, *2 (E.D. Wis. 2007) ("If seclusion is justified on either security or treatment grounds, the institution may impose such a condition."). According to Tran, his reassignment, or "seclusion," was ordered by Kriz, a Unit Supervisor. In determining whether the conditions of civil confinement are unconstitutionally punitive in nature, the court must defer to the judgment exercised by such qualified professionals. *Youngberg v. Romero*, 457 U.S. 307, 321 (1982). To overcome the presumptive validity of a decision made by a professional who is "competent, whether by education, training, or experience, to make the particular decision at issue," *Id.* at 323, a plaintiff must present facts that indicate the defendant did not base his or her decision on professional judgment. *Robinson*, at *5. Tran has not made any allegations that Kriz did not exercise professional judgment when imposing the 72 hour reassignments. Accordingly, his claims regarding his reassignments will be dismissed.

*Due Process*

Tran further claims he was sanctioned on the basis of four conduct reports without due process of law. However, this claim too must fail. In order for a person detained under Chapter 980 to state a due process claim, he must "identify a right to be free from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of his confinement." *Thielman v. Leean*, 282 F.3d 478, 484 (7th Cir. 2002.) Here, Tran's sanctions included a loss of dayroom

9

privileges for a total of twenty days, a prohibition on off-unit movement for twenty days, and two weeks on "Level D" status, which involved further restrictions on his use of the library, personal electronics, other equipment, and group activities, as well as demotion to the lowest pay scale. It is questionable whether such restrictions amount to an atypical an significant hardship in relation to the ordinary incidents of Tran's confinement. But even if a liberty interest was at stake, Tran's claim would still fail, because he admits that when notified of a hearing regarding his conduct reports, he refused to participate. *See King v. Prince*, 221 F.3d 1338, *3 (7th Cir. 2000) (holding that a pretrial detainee could not prevail on his claim that his placement in segregation violated his right to due process after waiving his right to a disciplinary hearing.) Furthermore, the actions Tran challenges were again ordered by a professional, identified by Tran as Karen Leitner, a psychiatric attendant supervisor, who is not named as a defendant in this action.[4] For these reasons, Tran may not proceed with his claim that his sanctions were imposed without due process.

*Other Statutory Claims*

Tran alleges that by their actions, the defendants violated the Developmentally Disabled Assistance and Bill of Rights Act of 1975 ("DDA"), 42 U.S.C. § 6000 et seq. However, the DDA does not create a private right of action. *Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1 (1981). Although he argues that the defendants have violated the Americans with Disabilities Act of 1990, ("ADA") 42 U.S.C.A. § 12131 et seq., and the Rehabilitation Act of 1973

---

[4] Although Tran suggests that Leitner was not a clinical staff member and that only clinical personnel would be qualified to exercise professional judgment and authorize sanctions, there is no such restriction. Non-clinical personnel may also exercise professional judgment in imposing sanctions for violations of institution rules. *See Williams v. Nelson*, 2004 WL 2830666, *11 (W.D. Wis. 2004).

("Rehabilitation Act"), 29 U.S.C. § 701 et seq., Tran has not alleged any way in which he was discriminated against on the basis of a disability. Thus, he has failed to state a claim under the ADA or Rehabilitation Act, and those claims will also be dismissed. Tran alleges generally that the entire "behavioral management system" at the WRC violates the Wisconsin Mental Health Act, Wis. Stat. 51.001, et seq., by utilizing the procedure set forth in Wis. Stat. § DOC 303, et seq. To the extent this state law claim is even intelligible, it appears entirely unrelated to Tran's sole remaining claim under federal law. I decline to exercise supplemental jurisdiction over the claim, and it will be dismissed without prejudice.

*Preliminary Injunction and Temporary Restraining Order*

Also pending before the court is Tran's motion for a preliminary injunction and temporary restraining order, in which he requests that the court order the defendants to "submit and implement a plan correcting the constitutional deficiencies alleged in [his] complaint." (Compl. 15.) Tran claims he is under "extreme pressure and stress as a result of the defendants' policy and actions." (Br. Supp. Mot. for Temporary Restraining Order at 4.)

The standards for a temporary restraining order and preliminary injunction are identical. The applicant has the burden of showing: (1) a reasonable likelihood of success on the merits, (2) no adequate remedy at law, and (3) irreparable harm if injunctive relief is denied. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). If the petitioner satisfies the initial three-step burden, the court must balance the irreparable harm to the nonmoving party if the injunction is granted against the irreparable harm to the moving party if the injunction is denied. *Id*. The court also must consider the effect of the injunction on nonparties. *Id*.

11

The court concludes that neither a preliminary injunction nor a temporary restraining order should issue in this matter. Tran's allegations in support of his motion allege generally that he is being subjected to punishment in violation of his rights as a Chapter 980 patient, but do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm, or indicate that Tran lacks adequate remedy at law. Tran's motion for a preliminary injunction and temporary restraining order will therefore be denied.

*Conclusion*

Tran has stated one cognizable claim. He may proceed with his claim that he was denied magazines and catalogs in violation of his rights under the First Amendment. Tran's claim under the Wisconsin Mental Health Act is dismissed without prejudice. All other claims are dismissed with prejudice. Accordingly, defendant Jennifer Hielsberg is dismissed from this action.

**THEREFORE, IT IS ORDERED** that plaintiff's request to proceed *in forma pauperis* is granted.

**IT IS ORDERED** that plaintiff's motion for a preliminary injunction and temporary restraining order is denied.

**IT IS ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the summons, and this order upon the defendants pursuant to Fed.R.Civ.P. 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting to make such service. 28 U.S.C. § 1921. The current fee for waiver-of-service packages is $8.00 per item. The full fee schedule is provided in 28 C.F.R. § 0.114(a)(2), (a)(3). Even though Congress requires the court to order service by the U.S. Marshals

12

Service when an impoverished person is permitted to proceed *in forma pauperis*, Congress has not provided for these fees to be waived, either by the court or the U.S. Marshals Service.

**IT IS ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed.R.Civ.P. 5(a). Plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Nothing in this order or in § 1915A precludes a defendant from moving to dismiss any claim identified in this order or potentially existing in the complaint if the defendant disagrees with my analysis or believes I have overlooked something during my screening.

Dated this   21st   day of March, 2008.

                s/ William C. Griesbach
                William C. Griesbach
                United States District Judge