UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HUNG NAM TRAN,

    Plaintiff,

                                                     Case No. 08-C-0228

ROBERT S. KRIZ and KIMBERLY M. ROBERTS,

    Defendants.

**DECISION AND ORDER**

      Plaintiff, Hung Nam Tran, filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Tran is proceeding *in forma pauperis* on delivery of mail and retaliation claims under the First Amendment. Now before me are Tran's motion to compel and request for sanctions and the defendants' motion for summary judgment.

**PLAINTIFF'S MOTION TO COMPEL AND REQUEST FOR SANCTIONS**

      Before reaching the defendants' motion for summary judgment, I will consider Tran's motion to compel and request for sanctions. Tran indicates that he "seeks to examine" property the defendants confiscated, including "catalogs, magazines, clothing and intellectual properties." He argues that this property belongs to him and "[t]here are no justifiable or legitimate reasons why these items should not have been disclosed for examination or inspection." Tran further states that "treatment records, grievances and reports pertaining to the plaintiff are available for inspection under other statutory provisions" and thus concludes that the defendants' failure to disclose the requested evidence "should be construed as a deliberate act of 'bad faith' in order to advance its

position." Tran asks the court to compel the defendants to comply with all of his requests. He further contends that the defendants failure to comply with his discovery requests cannot be construed as anything other than "bad faith" and, therefore, asks the court to compensate him for his costs and attorney fees incurred in preparing this motion.

Although Fed. R. Civ P. 37 permits the court to compel discovery, the party seeking such discovery must complete several steps before court intervention is appropriate. The party seeking discovery must first direct his request to the opposing party. If the opposing party fails to provide the materials, the party must then personally consult with the opposing party and attempt to resolve their differences. Civil L.R. 37.1 (E.D. Wis.). If the party is still unable to obtain discovery, he may file a motion to compel discovery with the court pursuant to Fed. R. Civ. P. 37(a). Such motion must be accompanied by a written statement that, "after personal consultation with the party adverse to the motion and after sincere attempts to resolve their differences, the parties are unable to reach an accord." Civil L.R. 37.1 (E.D. Wis.). A motion to compel discovery pursuant to Rule 37(a) is addressed to the sound discretion of the trial court. *EEOC v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233, 235 (E.D. Wis. 1996) (citation omitted).

Tran did not comply with the proper procedure before bringing his motion to compel. His motion contains no representation that he attempted to confer with the defendants before filing his motion to compel. For this reason alone, I must deny Tran's motion to compel.

Additionally, the court notes that the defendants were limited in their ability to response to Tran's discovery requests because Tran refused to sign the medical authorization the defendants provided. The defendants argue:

2

> Tran held the keys to obtaining the majority of his discovery – it was his failure to sign and/or return a sufficient authorization that prevented him from obtaining these documents, not any actions or inaction on the part of the defendants.

(Defs.' Br. at 4). Rather than signing the form the defendants provided, Tran signed only a limited authorization that did not include all of the disclosures necessary under HIPAA. Even if it was valid to release the records, Tran's authorization would not allow anyone other than defense counsel to view the records.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I. Background[1]**

Tran has an extended history of sexually assaulting young males, and his offense in 1991 related to the sexual assault of two children, 4 and 5 years old. Tran has been diagnosed with Pedophilia, Sexually Attracted to Males, Nonexclusive Type. This diagnosis was re-affirmed through an annual re-examination on July 25, 2008, conducted by Dr. Richard W. Elwood. On May 8, 2007, Tran was committed as a Sexually Violent Person ("SVP") under Chapter 980, Wisconsin Statutes. As a result, at all times relevant to this action, he was a civil detainee at the Wisconsin Resource Center ("WRC"), a specialized mental health facility established as a prison under the Wisconsin Statutes and identified as a treatment facility for the placement of SVPs detained or committed pursuant to Chapter 980. Tran is subject to dual supervision. He is a patient committed

---

[1] The facts are taken from admissible evidence presented by the parties in their proposed findings of fact and supporting affidavits and documents. Tran did not specifically respond to the Defendants' Proposed Findings of Fact. However, he did submit his own Plaintiff's Proposed Findings of Fact, as well as several affidavits.

3

under Chapter 980, but he is also subject to Department of Corrections ("DOC") rules of supervision until his maximum discharge date in 2011.

Defendant Robert Kriz is an Institution Unit Supervisor for the WRC on the Admissions, Treatment and Pre-Treatment Units (H17/18). Defendant Kimberly Roberts is currently employed by the DOC as a Social Worker at the Redgranite Correctional Institution. Prior to her employment at DOC, Ms. Roberts was a Social Worker at WRC from November 2006 to October 2008.

Units H-17/18 at the WRC provide patients with a therapeutic environment. Even those patients who have refused to consent to sex offender treatment are encouraged to engage in activities that promote positive behavior and personal growth. Patients at the WRC have the opportunity to receive reading materials and possess up to twenty-five publications. Reading materials and publications include but are not limited to books, magazines, catalogues, newspapers, pamphlets and correspondence. Pursuant to WRC policy, all reading materials, except legal mail, addressed to WRC patients are opened by WRC mail room staff. Designated WRC treatment staff review reading materials coming into the WRC that are suspected of containing counter-therapeutic content. Defendant Kriz was responsible for making decisions, in consultation with the treatment team, regarding the denial of counter-therapeutic reading materials, which may include sexually explicit materials, sexual materials related to children or juveniles, sexually violent materials, and any other materials that, in the professional judgment of the treatment team, would be detrimental to the therapeutic environment.

When a patient's rights are denied or limited, including when the delivery of reading materials or publications is denied, a Client Rights Limitation or Denial form is completed. According to the defendants, good cause for denial or limitation of a right exists only when there

4

is reason to believe the exercise of the right would create a security problem, adversely affect the patient's treatment or seriously interfere with the rights or safety of others.

Additionally, Tran's Rules of Community Supervision, as amended on or about July 5, 2007, state: "You shall not possess photographs of any minors, including but not limited to magazines, catalogues or computer generated." When the amended rules arrived, defendant Roberts attempted to review with Tran his new Rules of Community Supervision, but Tran became belligerent and was directed to his WRC housing unit.

Some time prior to July 24, 2007, a JC Penney Kids catalog arrived at the WRC, addressed to Tran. Defendant Kriz reviewed the catalog and found that the catalog contained pictures of children and adolescents, including young boys. He determined that the catalog was properly denied and completed the appropriate forms.

Approximately two weeks later, a Talbots Kids catalog arrived at the WRC, addressed to Tran. Defendant Roberts completed a form denying Tran access to the catalog. Defendant Kriz reviewed the catalog and found that the catalog contained pictures of children and adolescents. It was determined on August 29, 2007, that the denial of the catalog should continue.

A Hannah Anderson children's clothing catalog arrived at the WRC in October 2007, addressed to Tran. Defendant Roberts denied the mail and, on October 4, 2007, defendant Kriz reviewed the catalog and found that it contained pictures of children. Additionally, two other WRC employees reviewed the denial of the Hannah Anderson catalog and determined that the denial should continue.

On November 26, 2007, defendant Roberts completed a denial form relative to another JC Penney Kids catalog that arrived at the WRC addressed to Tran. Defendant Kriz also reviewed the

5

catalog and found that it contained pictures of children. Defendant Kriz and psychological services staff reviewed the denial of the catalog and determined that it should continue.

In October 2007, the Winter 2007 Out Traveler magazine arrived at the WRC addressed to Tran. On October 16, 2007, defendant Roberts completed the form denying Tran the publication. On the same day, defendant Kriz reviewed the publication and found that it contained pictures of male genitalia. Kriz consequently determined that the denial of the publication should continue. Psychiatric Care Supervisor Darryl Franklin reviewed the publication on October 18, 2007 and made the same determination.

The WRC also received the November 2007 issue of Out magazine addressed to Tran. On October16, 2007, defendant Roberts denied the mail due to safety/security reasons. Defendant Kriz reviewed the publication and found that the publication contained pictures of males taking a shower with their backsides exposed. Kriz determined that the denial was appropriate due to treatment reasons and the fact that the magazine was in violation of the DOC rules of supervision related to Tran. On October 18, 2007, PCS Darryl Franklin reviewed the denial of the November 2007 issue of Out magazine and determined that denial of the catalog should continue.

On October 16, 2007, defendant Roberts contacted Tran's parole agent regarding the Out magazine and Out Traveler publication. The parole agent advised Roberts that neither magazine would be appropriate for Tran to possess.

Neither defendant Roberts nor defendant Kriz were personally involved in the decision to institute revocation proceedings related to Tran or his April 3, 2008 transfer to Sturtevant Transitional Facility, a DOC administered facility that typically houses offenders who have been found to violate rules of parole or probation and are placed there to await revocation hearings.

6

In his affidavit, Tran indicates that he has been using children's catalogs to order clothing without incident for over twenty-five years. He does not fit into adult size clothing due to his small stature. Tran avers that there are "no clinical reports or any evidence whatsoever that I had ever used children [sic] catalogs for the purposes of sexual arousals" and that, despite his diagnosis, he has never possessed any sexually explicit materials of children. (Aff. of Tran, ¶15.) Tran further affirms that he was allowed to order from these same catalogs without incident from November 2004 to November 2006, when Roberts arrived at WRC. Tran indicates that no clinical staff ever determined that children's catalogs were counter-therapeutic for him, and he maintains that neither Roberts nor Kriz were authorized to make such a determination.

In his affidavit, Tran does not reference either the Out or Out Traveler publications. Nor does he make averments regarding his retaliation claim. Tran's affidavit contains legal arguments regarding a June 2, 2008 decision by an administrative law judge that Tran's parole not be revoked in Case 91-CF-0525. However, my review of that decision reveals that it does not mention either of the defendants or suggest that they initiated the revocation proceedings regarding Tran.

Tran further alleges that defendant Roberts made advances toward him in a sexually inappropriate way and sent him sexually explicit materials of female genitalia. He refers generally to numerous incidents that occurred in Roberts' office and submits that when Tran rejected her advances, Roberts called him a "gook" and told him it was not in his best interest to resist her.

**II. Tran's Supplemental Materials**

Along with their reply brief, the defendants submitted two supplemental affidavits. Tran then filed a response to the defendants' supplemental affidavits, two supplemental affidavits of his own and supplemental proposed findings of fact. Tran argued that the defendants' supplemental

7

affidavits were untimely, and he also offered additional evidence of allegedly disputed material facts. In a letter dated September 17, 2009, the defendants correctly pointed out that their reply materials were timely and asked me to strike the plaintiff's surreply filings or disregard them because they were not authorized by applicable rules or the court.

Civil Local Rule 7.1(c) sets forth the time frame within which parties must file their response and reply briefs. It states that response briefs written in opposition to motions for summary judgment must be filed "within 30 days of service of the motion" and reply briefs must be filed "within 15 days of service of the response brief." *Id.* Civil Local Rule 7.1(f) sets forth the page limits for these briefs, but also states that "[a] reply brief must be limited to matters in reply" to the response brief. Finally, Civil Local Rule 56.2 sets forth the summary judgment motion procedures. It does not allow for the filing of documents beyond the response and reply briefs, which includes the surreply brief and affidavits filed by Tran in this case. *See* Civil L.R. 56.2(b), (c) and (d).

Moreover, the information presented by Tran is not relevant to this case. He suggests retaliatory motives for the denial of publications, which is not a claim in this case. He also references occurrences with other patients at WRC, which do not affect Tran's claims. Nevertheless, in the interest of allowing Tran to pursue his claims and represent himself vigorously, I will deny the defendants' request that the materials be stricken. I have reviewed the materials and, to the extent they contain relevant and admissible evidence, considered them.

**III. Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56(c), "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

8

as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discover and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.* Once the moving party has demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show that there is a genuine dispute as to the material facts of the case. *Id.* at 323-24. The responding party "may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

**IV. Analysis**

The defendants submit that they are entitled to summary judgment because the denial of Tran's publications was reasonably related to legitimate institutional needs. The defendants also argue that they are entitled to judgment on Tran's retaliation claim because they were not personally involved in Tran's transfer to a Department of Corrections facility. The defendants further argue that they are entitled to either absolute and/or qualified immunity. In response, Tran maintains that: (1) the defendants deliberately withheld material and disputed evidence to prejudice his ability to respond; (2) genuine issues of material fact preclude summary judgment on both of Tran's claims; and (3) neither defendant is entitled to absolute or qualified immunity.

    **A.**    **Delivery of Mail Claim**

The defendants argue that the removal of catalogs that feature children, children's clothing, and children's undergarments is reasonably related to the WRC's therapeutic goals. The defendants

9

further contend that the Out and Out Traveler publications are undisputedly counter therapeutic because they contained nude pictures, full-frontal nudity and a picture that depicts sexual violence. They submit that "the denial of sexually explicit materials to sex offenders does not offend the Constitution." Plaintiff contends that the denials were "overbroad and not legitimately narrow to achieve penological objectives."

Restrictive prison regulations are permissible if they are "reasonably related" to legitimate penological interests and are not an "exaggerated response" to such objectives. *Turner v. Safely*, 482 U.S. 78, 87 (1987). *Turner* sets forth four factors to be considered in determining the reasonableness of the regulation at issue: (1) is there a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it; (2) are there "alternative means of exercising the right that remain open to prison inmates;" (3) what "impact" will "accommodations of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally;" and (4) are "ready alternatives" for furthering the governmental interest available? *Id.* at 89-90.

Here, as in *Everett v. Watters*, No. 06-C-497-C, 2007 WL 2005264 (W.D. Wis. July 9, 2007), the defendants presented "undisputed expert testimony that permitting [a Chapter 980 patient] to receive sexually explicit materials would undermine the center's ability to carry out its mission because such materials exacerbate the mental disorders that lead to civil confinement under the sexual predator laws." 2007 WL 2005264, at *3. Although *Everett* addressed a patient at Sandridge Secure Treatment Facility, the reasoning is applicable to all patients committed under Chapter 980.

10

The defendants have submitted affidavits indicating that the JC Penney Kids, Talbots and Hanna Anderson catalogs would be counter therapeutic in the possession of Tran or any other patient residing at WRC. They also aver that the materials in the catalogs are especially detrimental and counter therapeutic to Tran due to his criminal offenses related to young males and his pedophile diagnosis. It is commonly believed that pedophiles should not have pictures of children because such pictures fuel their sexual attraction to children and leads to increased attraction.

Additionally, the defendants aver that the publications could present security concerns at WRC because many pedophiles enjoy looking at pictures of children and use the pictures for their own sexual desires. If the defendants allowed Tran to access to pictures of children, he could use them to barter with other patients who may want the pictures for deviant sexual purposes.

The confiscation of the JC Penney Kids, Talbots and Hanna Anderson catalogs and the Out and Out Traveler magazines were the least restrictive manner in which to ensure that Tran and other patients do not have access to materials that are detrimental to the therapeutic environment at WRC. Although not every page of the JC Penney Kids, Talbots and Hanna Anderson catalogs and the Out and Out Traveler magazines was counter-therapeutic, once a portion of a publication is deemed to be counter-therapeutic the entire publication must be banned. It was not possible to remove the objectionable pages because once a publication has been altered, it is considered contraband.

For the foregoing reasons, the court concludes that there is a legitimate interest in not allowing diagnosed pedophiles to possess pictures of children. The defendants were also complying with Tran's Rules of Community Supervision, which prohibit him from possessing photographs of children, as well as the opinion of Tran's parole agent that the Out and Out Traveler publications were not appropriate for him. If, as he claims, Tran needs to order clothing from such magazines,

11

there is no reason he could not do so under the supervision of staff. He has offered no evidence that he needs to have possession of the magazines in his own quarters in order to obtain appropriate clothing. The burden posed by the rule is therefore slight.

Prisoners who are released on parole are not subject to the same liberties as nonprisoner citizens. Rather, "parole is an established variation on imprisonment of convicted criminals." *Morrissey v. Brewer*, 408 U.S. 471, 478 (1972). "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* at 477. Parole officers have broad discretion in imposing parole conditions. *Id.* at 479. These conditions typically require parolees to seek permission from their parole officers before "changing employment or living quarters, marrying, acquiring or operating a motor vehicle, traveling outside the community, and incurring substantial indebtedness." *Id.* at 478.

Even if Tran were not committed, he would still be on parole until his mandatory release date in 2011. While on parole, he would not be able to possess these items. Consequently, it is difficult to imagine that the defendants would be unable to limit Tran's access to the same materials in the more restrictive institutional setting. Thus, withholding them from him at the WRC is not a violation of his constitutional rights.

Tran contends that a jury could conclude that the denial of the publications was the result of the sexual harassment incident between Tran and Roberts and not because such denial was for the advancement of therapy since there was no therapy or sex offender treatment at WRC. He cites to the fact that the denial of all six publications occurred between July 2007 and October 2007, after Tran asserts that he resisted defendant Roberts' sexual advances. However, this argument relates

12

to a retaliation claim that has not been pleaded. The court specifically addressed Tran's sexual harassment claim in its screening order and did not allow Tran to proceed on it. The plaintiff did not allege retaliation regarding the denial of his publications, only regarding his revocation. A petition is not amended by an argument in a party's brief. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 606 (7th Cir. 2000) (A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment).

Tran also contends that due process rights are implicated whenever mail is withheld and, as a result, he should have been given notice and an opportunity for a hearing regarding each denial. Once again, this is not a claim Tran presented in his second amended complaint or on which he was permitted to proceed. *Id.*

Further, Tran argues that the decision to deny these materials should not have been made by the defendants, who are social services staff instead of clinical staff. However, the denial of publications is not the unauthorized practice of psychotherapy. It is not a psychological or psychiatric determination. Social services staff are certainly capable of making decisions regarding the health and welfare of the patients at the WRC, as well as decisions regarding the safety and security of the institution.

The defendants could have denied Tran's publications simply because they violated his Rules of Community Supervision. Moreover, the denials did not violate Tran's constitutional rights because the denials are reasonably related to legitimate therapeutic goals necessarily at play when housing a sex offender to deny a civilly committed sex offender and diagnosed pedophile sexually explicit materials and publications including pictures of children. Although Trans contends that he

13

has used the magazines to order clothing in the past, he has made no showing that he cannot obtain appropriate clothing without keeping such magazines in his quarters.

### B. Retaliation

Tran's retaliation claim arises under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Since a § 1983 cause of action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). In order to be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

Defendants Roberts and Kriz have presented admissible evidence, in the form of their affidavits, that they were not personally involved in the decision to institute revocation proceedings related to Tran or his April 3, 2008 transfer to Sturtevant Transitional Facility, a DOC administered facility that typically houses offenders who have been found to violate rules of parole or probation and are placed there to await revocation hearings.

Although Tran now argues that the defendants denied delivery of his publication in retaliation for his rejection of defendant Roberts' sexual advances, such a claim is not part of this lawsuit. I allowed Tran to proceed on a claim that his pending transfer to a correctional institution was initiated in retaliation for Tran's complaints about the defendants.

14

Tran has presented no admissible evidence to suggest that either defendant Roberts or Kriz was involved in the decision to initiate revocation proceedings against him. Tran presented affidavits from two other WRC patients in which each asserts that defendant Roberts retaliated against him for filing complaints against her by attempting to revoke their parole. (Affidavit of Mark B. Evans, ¶10, Affidavit of Herbert G. Wilkins, ¶18). However, neither of these instances involving other WRC patients constitutes admissible evidence to contradict the affidavits of Roberts and Kriz in which they aver that they were not involved in the decision to initiate revocation proceedings regarding Tran. The information submitted by Tran, even viewed in the light most favorable to him, does not change the fact that he does not have admissible evidence to oppose the affidavits of Roberts and Kriz regarding their involvement in the decision to initiate revocation proceedings against him.

On Tran's retaliation claim, the defendants' motion for summary judgment was properly made and supported, and Tran has failed to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Accordingly, I will grant the defendants' motion for summary judgment regarding the retaliation claim.

**CONCLUSION**

**THEREFORE IT IS ORDERED** that Tran's motion to compel and request for sanctions (Docket #30) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' request that the court strike Tran's surreply materials (Docket #60) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #33) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment dismissing the plaintiff's claims and this action.

Dated this   18th   day of December, 2009.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge